CITIZENS ALLIANCE TO SAVE the SOUTHLINE; United Transportation Union; Brotherhood of Locomotive Engineers; and Brotherhood of Maintenance of Way Employees, Plaintiffs,

v.

MONTANA RAIL LINK, INC., a Montana corporation; and Burlington Northern Railroad Company, a Delaware corporation, Defendants.

No. CV 87–74–H–CCL.

United States District Court,
D. Montana,
Helena Division.

Aug. 27, 1987.

James H. Goetz and Brigitte M. Anderson, Goetz, Madden & Dunn, P.C., Bozeman, Mont., for plaintiffs.

Edward A. Murphy, Datsopoulos, MacDonald & Lind, Missoula, Mont., Leo Berry, Browning, Kaleczyc, Berry, & Hoven, P.C., Helena, Mont., for defendants.

## OPINION AND ORDER

LOVELL, District Judge.

Following a hearing on plaintiffs' motion to remand this action to state court, and upon their request for expedited disposition, the Court issued an order denying the motion for remand and dissolving the temporary restraining order previously entered by the state court. This opinion follows to explain the Court's ruling. Additionally, plaintiffs move for reconsideration of the order denying remand based on the authority of two recent decisions of the United States Supreme Court which the parties failed to cite and argue to the Court.

## BACKGROUND

On July 21, 1987, defendant Burlington Northern Railroad Company (BN) agreed

to transfer, by sale and lease, approximately 830 miles of interstate rail lines to defendant Montana Rail Link (MRL). The proposed transfer involves a 544–mile stretch of line from Huntley, Montana, to Sandpoint, Idaho (the BN "southline") as well as 286 miles of branch lines, most of which are contained within the state of Montana.

Pursuant to federal law, MRL filed a Verified Notice of Exemption with the Interstate Commerce Commission (ICC) on July 24, 1987, stating its intention to acquire and operate the rail lines and property subject to the acquisition agreement. *See* 49 U.S.C. §§ 10901, 10505; 49 C.F.R. §§ 1150.31–1150.33.[1]

Simultaneously with its notice to the ICC, MRL filed a Notice of Intent with the Attorney General of the State of Montana and with the Montana Public Service Commission pursuant to a recently enacted state statute. In part, the state statute requires that as a condition for the transfer of a line of railroad,

> thirty days prior to filing with the Interstate Commerce Commission of an application to purchase, sell or transfer any section of a line of railroad, the seller and buyer shall:
>
> (1) file a notice of intent and other information ... with the attorney general and the commission;
>
> *   *   *   *   *   *

H.B. 861, 50th Leg., § 2 (Mont.1987).

Plaintiffs filed this action in the First Judicial District of the State of Montana on July 30, 1987, alleging violation of the 30–day notice provision of the state statute

and seeking broad injunctive relief.[2] A temporary restraining order was issued enjoining the defendants "from proceeding with, consummating or in any other way transacting the sale and/or lease of railroad right of way, tracks, personal property, facilities, or any other aspects" of the BN southline and branch lines and facilities.[3] Defendants removed the action to this Court on August 6. I extended the temporary restraining order to maintain the *status quo* pending hearing on the motion to remand.

Plaintiffs seek remand on the ground that the Court lacks subject matter jurisdiction both by reason of the nondiversity of citizenship between the parties and because the case does not "arise under" the constitution, laws or treaties of the United States.

## DISCUSSION

Defendants do not seek to ground federal subject matter jurisdiction on diversity of citizenship between the parties. The only issue, therefore, is whether the Court has removal jurisdiction pursuant to the "federal question" statute, 28 U.S.C. § 1331.

Removal of a civil case to federal court is proper if the case is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The district courts have original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. The issue here is whether plaintiffs' claims, though predicated on violation of a state statute, "arise

1. Under the ICC's regulations, the exemption becomes effective seven days after the notice is filed. 49 C.F.R. § 1150.32(b). The exemption is the standard method used to acquire ICC approval for acquisitions and operations. ICC Ex Parte No. 392 (Sub. No. 1) (Dec. 19, 1985). The ICC retains jurisdiction to review the transaction and even to revoke the exemption. 49 U.S.C. § 10505(d).

2. On the same day, an action was filed in this Court arising out of the same transaction, naming some of the same parties, and seeking relief based on federal law.

3. Defendants complain that prior to the state court hearing on the motion for temporary restraining order, they gave notice to Plaintiffs and the Court of their intention to remove the case to federal court. At the time set for hearing Defendants appeared with the removal papers but were unable to file them because the complaint had not been filed. Defendants objected to the court proceeding to hear Plaintiffs without the complaint being filed and were overruled. The file reflects that both the complaint and the restraining order were filed at 3:21 p.m. July 30, 1987. Mont.R.Civ.P. 3 states: "A civil action is commenced by filing a complaint with the Court."

under" federal law. The burden of establishing federal subject matter jurisdiction falls on the party invoking the removal statute, which is strictly construed against removal. *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (citing *Hunter v. United Van Lines*, 746 F.2d 635, 639 (9th Cir.1984), *cert. denied*, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed. 2d 150 (1985), and *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1426 (9th Cir.1984)).

A case "arises under" federal law within the meaning of section 1331 "only if the federal question appears on the face of plaintiff's well-pleaded complaint; if not, original jurisdiction is lacking even if the defense is based on federal law." *Hunter*, 746 F.2d at 639.[4] The "artful pleading" doctrine, which represents a narrow exception to the ordinary rules of federal jurisdiction, allows a court under certain circumstances to recharacterize a plaintiff's state law claim as a federal claim and thus to assume jurisdiction of the action. *Id.* at 640; *Utley v. Varian Associates, Inc.*, 811 F.2d 1279, 1287 (9th Cir.1987).

An "independent corollary" to the well-pleaded complaint rule, known as the "complete preemption" doctrine, allows a finding of federal question jurisdiction where the court concludes "that the pre-emptive force of a statute is so 'extra-ordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Caterpillar, Inc. v. Williams*, —— U.S. ——, ——, 107 S.Ct. 2425, 2430, 96 L.Ed. 2d 318 (1987) (quoting *Metropolitan Life Insurance Co. v. Taylor*, —— U.S. ——, ——, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). *See also, Bergkamp v. New York Guardian*, 667 F.Supp. 719 (D.Mont. 1987).

The Supreme Court has made clear that a defendant cannot select the forum in which the plaintiff's claim shall be litigated "merely by injecting a federal question into an action that asserts what is plainly a state-law claim." *Caterpillar, Inc.*, —— U.S. at ——, 107 S.Ct. at 2433. Thus, even though a defendant might ultimately prove that a plaintiff's claims are preempted by federal law, that alone does not establish removal jurisdiction. *Id.* However, "the touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the preemption defense but the intent of Congress." *Metropolitan Life*, —— U.S. at ——, 107 S.Ct. at 1548.

The artful pleading doctrine, although it is invoked only in exceptional circumstances, is applied to prevent plaintiffs "from 'attempt[ing] to avoid a federal cause of action.' " *Hunter*, 746 F.2d at 641–42 (quoting *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1370 (9th Cir.1984)). It applies only when federal law not only displaces state law but also confers a federal remedy. *Hunter*, 746 F.2d at 642.

The Interstate Commerce Act establishes a pervasive and comprehensive federal regulatory scheme governing interstate rail and motor carriers. *Chicago & N.W. Tr. Co. v. Kalo Brick & Tile*, 450 U.S. 311, 318, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981). The Supreme Court has observed that it is inconsistent with federal policy to allow local authorities to decide whether rail carriers may do what the Act authorizes them to do. *Id.* at 318, 101 S.Ct. at 1130. Certainly, the Courts have historically faced issues of preemption in the field of rail regulation. *Union Pacific R. Co. v. Woodahl*, 308 F.Supp. 1002, 1009 (D.Mont. 1970).

Plaintiffs argue that it is inappropriate for the Court to consider the merits of the preemption defense at this stage of the proceedings. Indeed, as the *Caterpillar* case instructs, a successful preemption defense does not allow an otherwise non-removable case to be brought into federal court. However, the Court need not put the cart before the horse and decide the

---

**4.** The Ninth Circuit repeatedly has questioned the logic of denying removal jurisdiction to a defendant who relies on federal law for its defense, but has recognized that in the absence of Congressional action the courts are powerless to broaden their jurisdiction. *Hunter*, 746 F.2d at 639; *Sullivan*, 813 F.2d at 1372 n. 4.

merits of the case to determine whether it has jurisdiction.

In this case, the complaint filed in state court requested temporary and permanent injunctive relief prohibiting the transfer because of the alleged state law violation. Regardless of the ultimate determination whether Montana's law is valid, the relief sought by the plaintiffs herein clearly is a federal remedy. The essence of the complaint is a demand to stop the rail transfer, a remedy clearly within the jurisdiction of the ICC and made available by its regulatory framework. The state agencies involved in the administration of railroads are pursuing this federal remedy along the lines intended by Congress. In view of the regulatory scheme established by Congress governing the transfer of rail lines, and the remedies provided within that scheme, federal law clearly and completely controls the remedy sought by plaintiffs herein. When examined within its four corners, the complaint raises a substantial federal question; *i.e.,* whether proceedings before the Interstate Commerce Commission may be enjoined because of a state law violation. Federal law leaves no room for a state court to decide this issue.

Therefore, removal was proper.

Having determined that jurisdiction is properly in this Court, I normally would have proceeded with a hearing on the need for issuance of a preliminary injunction. In view of Defendants' agreement to stipulate that no railroad properties would be transferred for 30 days, such hearing was deemed unnecessary and will not be set down on the Court's own motion.

The motion for reconsideration is DENIED.

Upon further examination of the files and pleadings herein, the Court is of the opinion that this case and the case of *United Transportation Union, et. al. v. Burlington Northern Railroad Company,* 672 F.Supp. 1579, may be appropriate for consolidation pursuant to Fed.R.Civ.P. 42(a), and therefore ORDERS that the parties shall file simultaneous briefs within ten days hereof setting forth their positions on consolidation.

The clerk is directed to forthwith notify counsel of the making and entry of this order.

